UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                            PLAINTIFF

v.                                CRIMINAL ACTION NO.: 3:22-CR-123-DJH

REGINALD DEWAYNE BROWN                                      DEFENDANT

**RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Defendant Reginald Dewayne Brown (hereinafter, "Brown") moves this Court to suppress all evidence resulting from the search of the defendant's person and car, and from the search of 8805 Beulah Church Road. (DN 105, Motion to Suppress Evidence). In his motion, Brown makes three claims: 1) the ping warrant contained false information and was a fishing expedition; 2) there was no nexus established between the location and the evidence sought; 3) the search warrant affidavit did not contain probable cause to believe that Brown had any evidence or contraband on his person or in his vehicle. The United States objects to the motion, and will address each claim below.

**FACTUAL BACKGROUND**

On September 21, 2022, Detective Cody Pfeiffer with the Louisville Metro Police Department (LMPD) submitted an application for a search warrant to Jefferson County Circuit Court Judge McKay Chauvin. (A copy of the search warrant and supporting affidavit are attached collectively hereto as "Exhibit A"). Det. Pfeiffer sought authority to ping Brown's cell phone and the application also included language for a Pen register and trap and trace device as part of a

criminal investigation of Brown by LMPD. Judge McKay Chauvin authorized the search warrant, which was executed by LMPD on the following day, September 22, 2022.

According to the affidavit, on Wednesday, September 14, 2022, Det. Pfeiffer filed a criminal complaint warrant on Brown. Exhibit A, P. 7. As a result of the complaint, Brown had an arrest warrant for Fleeing in the First Degree, Motor Vehicle, Wanton Endangerment in the First Degree, Excessive Window Tinting, and Disregarding a Stop Sign. *Id*. These charges stem from an investigation that occurred on Monday, July 4, 2022. *Id*. Det. Pfeiffer states that he "discovered that Mr. Reginald Dwayne Brown is currently on Probation and reports to Kentucky Probation and Parole District 16 located at 410 W. Chestnut Street in Louisville, Jefferson County, Kentucky." *Id*. The affidavit states that on July 4, 2022, detectives with the LMPD were doing physical surveillance at 2728 W. Market Street at The Dairy Mart when they observed a known offender and multi-time convicted felon, Lorenzo Carroll, with a handgun with an extended magazine in his front waistband. *Id.* Carroll was observed standing at the passenger side door of a white 2016 Dodge Challenger, and later moving that same vehicle to a parking spot close to the store. *Id.* Officers observed an unknown individual, later identified as Brown, enter the Challenger and depart The Dairy Mart. *Id.* at P. 7-9. Detectives initiated a traffic stop on the Challenger with lights and sirens, but the "vehicle failed to yield and accelerated at a high rate of speed in a residential neighborhood fleeing detectives. Detectives did not pursue this vehicle and terminated once the vehicle refused to yield." *Id.* at P. 8.

Det. Pfeiffer reached out to Probation and Parole Officer Colter Turner and provided him with a photograph of the individual believed to be Brown. *Id.* at P. 9. Officer Turner confirmed the individual to be Brown, and provided Det. Pfeiffer with the phone number and address provided by Brown to Probation. *Id*. The telephone number provided by Probation was 502-821-

0990. *Id.* Det. Pfeiffer researched the telephone number on a law enforcement investigative tool and was unable to retrieve any useful information. *Id.* Det. Pfeiffer also reached out to a DEA Intelligence Research Specialist who was able to provide him with carrier and subscriber information, as well as inform him about the phone number being tied into an active DEA case. *Id.* Det. Pfeiffer included in his affidavit the following certification:

> I certify that the Louisville Metro Police Department is conducting a criminal investigation as well as a fugitive investigation of a violent felony offender in connection with possible violations of weapon possession. It is believed that the below named person is utilizing the telephone in furtherance of the subject offense and that the information likely to be obtained from the PEN register and trap-and-trace devices is relevant to the ongoing fugitive and criminal investigation being conducted by the above-named agency.

*Id.* at P. 11.

After the ping warrant was executed on September 22, 2022, LMPD began receiving cell phone data pursuant to the warrant and Pen register and trap and trace.[1] Exhibit B, P. 9. On Friday, September, 23, 2022, Det. Pfeiffer located a 2016 grey Chevy Malibu, which was a vehicle known to law enforcement to be typically operated by Brown, travelling down Hurstbourne Parkway. *Id*. However, since at the time they were unsure who was operating the vehicle, LMPD conducted a physical follow. *Id.* During the follow of the vehicle, law enforcement observed a Nissan Murano with Texas registration, which appeared to follow Brown's vehicle. *Id.* at P. 9-10. Ultimately both vehicles arrive at 8805 Beulah Church Road. *Id*. at P. 10.

During the investigation, law enforcement set up surveillance and observed multiple vehicles coming and going from the location, and most distinctly they observed a vehicle arrive and Clarence Stott was handed a vacuum sealer and a roll of bags. *Id*. After approximately four hours of surveillance, detectives, along with air support, observed the Nissan Murano depart the

---

[1] This information is derived from the subsequent search warrant issued for 8805 Beulah Church Road, Louisville, Kentucky and Brown and Stott's vehicles. A copy of the search warrant and supporting affidavit are attached collectively hereto as "Exhibit B".

residence. *Id.* The Murano drive directly to 9400 Blairwood Road to the Baymont Inn and backed into a parking spot next to a backed in 2004 Nissan Titan bearing a Virginia registration plate. *Id.* Law enforcement then observed Axel Diaz Hernandez exit the driver's seat of the Murano, grab a toolbox, and place it in the bed of the truck. *Id.* Diaz Hernandez also grabbed a brown bag and placed it in the backseat area along with an additional bag. *Id.* Due to the suspicious nature of these activities, along with a traffic infraction observed during the follow of Diaz Hernandez, law enforcement made contact with Diaz Hernandez after the vehicle switch when he was sitting in the Nissan Titan. *Id.*

Upon law enforcement's approach to Diaz Hernandez's vehicle, they observed Diaz Hernandez with a user amount of marijuana that he was attempting to roll up. *Id.* Upon probable cause search of the vehicle and after a trained narcotics detection canine alerted to a bag, detectives located a brown bag behind the operator's seat of the vehicle that contained a kilo of suspected cocaine. *Id.* Moreover, law enforcement also located on Diaz Hernandez's person and in the Murano large amounts of US currency. *Id.*

Based on this information and the fact that law enforcement had observed Brown, known to them to have an active felony arrest warrant at 8805 Beulah Church Road, law enforcement conducted a vehicle takedown in the driveway of 8805 Beulah Church Road after Stott and Brown entered the 2012 Audi A7 in the driveway. *Id.* At that time, law enforcement took Brown into custody and detained his co-defendant, Clarence Stott. *Id.* At the time of arrest, Brown possessed a large amount of US currency. *Id.* at P. 10-11.

After Diaz Hernandez's arrest, he provided statements to law enforcement that Brown had handed him the bag that contained the kilo of suspected cocaine and that Stott provided Diaz Hernandez with the payment to transport the suspected narcotics. *Id.* at P. 12. Additionally, Diaz

4

Hernandez informed law enforcement that "there was an extremely large amount of US currency inside 8805 Beulah Church Road on the kitchen table" and that Brown and Stott had both been smoking marijuana at 8805 Beulah Church Road. *Id.* On that same day, September 23, 2022, after obtaining this information, law enforcement applied for and were granted a search warrant for 8805 Beulah Church Road, Louisville, Kentucky, and Brown and Stott's vehicles, which were parked in the driveway.

Upon execution of the search warrant at the residence, law enforcement seized approximately eight kilograms of cocaine, one AK-47, one money counter, drug paraphernalia consistent with a large-scale cocaine trafficking operation, and a large amount of United States currency.

On October 4, 2022, a federal grand jury for the Western District of Kentucky returned an indictment, charging Stott, Brown and Diaz Hernandez with conspiracy to distribute controlled substances, and individuals counts for the three defendants of possession with intent to distribute controlled substances. (DN 1, Indictment).

**ARGUMENT**

I. **THE AFFIDAVIT DOES NOT INCLUDE FALSE INFORMATION AND WAS SUFFICIENT TO SUPPORT PROBABLE CAUSE TO ISSUE THE WARRANT.**

As stated above, Brown claims that the affidavit in support of the ping warrant and Pen register and trap and trace contained false and misleading information concerning Brown's alleged involvement with possible violations of weapon possession. Moreover, Brown claims the affidavit contains no new information regarding any new criminal activity and was merely a fishing expedition. However, the arguments put forth by the defendant fail, as the affidavit contains information that Brown had an outstanding arrest warrant at the time of the search warrant

application and was a fugitive. The fact that Brown had an arrest warrant outstanding and was a fugitive was sufficient justification for law enforcement to seek a ping warrant. Furthermore, Det. Pfeiffer included in the affidavit the reasons he believed Brown may have possible violations of weapon possession.

### A. Legal Principles

#### i. Probable Cause

Affidavits "must contain adequate supporting facts about the underlying circumstances to show that probable cause exists." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996). "Probable cause arises if there are 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990)). "Search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny." *Coffee*, 434 F.3d at 892.

A judge determines whether an officer has sufficient probable cause before issuing a search warrant. "It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *United States v. Leon*, 468 U.S. 897, 921 (1984). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.*

With regard to probable cause to justify a search, it "exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *United States v. Payne*, 119 F.3d 637, 642 (8th Cir. 1997). Stated differently, "[t]o demonstrate probable cause to justify issuance of a search warrant, an

affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006)(quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)(internal quotations and citation omitted)).

When reviewing probable cause, courts "may only look within the four corners of the affidavit." *United States v. Abboud*, 438 F.3d at 571 (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). Reviewing courts should avoid "rubber stamping" an earlier decision by a court. However, courts should "give great deference to a magistrate's determination of probable cause." *Abboud*, 438 F.3d at 571 (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)(quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969))(en banc)). Courts should "avoid engaging in a hyper-technical, line-by-line critique of an affidavit." *United States v. Lawson*, 2006 WL 1538889 at 8 (6th Cir. June 5, 2006)(citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983). The question of whether an affidavit establishes a proper nexus is a fact-intensive inquiry requiring an examination of the totality of circumstances. *United States v. Brown*, 828 F. 3d 375 (6th Cir. 2016).

Brown claims that the information contained in the warrant was insufficient for the Court to issue the warrant. However, the information in the affidavit specifically refutes these allegations. First, the affidavit details the investigative steps taken by Det. Pfeiffer as part of his investigation into Brown. Det. Pfeiffer does not omit or leave out information which would mislead the court about Brown. Rather, he includes the information about how he determined this was Brown's phone and the reasons for seeking a criminal complaint and arrest warrant for Brown. As outlined in the affidavit, at the time of the search warrant application, Brown had an arrest warrant. Brown was a "person to be arrested" within the meaning of the Federal Rule of Criminal Procedure

41(c)(4). Thus, in addition to the investigation into Brown's conduct on July 4, 2022, the defendant was also a fugitive based on his flight from police and the outstanding arrest warrant.

### ii. The Affidavit Did Not Contain False Information.

Brown's claims, though vague, appear to allege that the affidavit contained a material omission or inclusion by not alleging any new criminal activity by Brown and by including that there was a fugitive investigation.

There are two issues with Brown's attack on this ground. First, he has failed to meet his heavy burden under *Franks v. Delaware* to allow this Court to consider facts outside the four corners of the affidavit. Second, his allegation is demonstrably false.

First, Brown's statement that there was no fugitive investigation at the time of the issuance of the search warrant is refuted by the fact that there was an arrest warrant outstanding and is insufficient to entitle the defendant to go outside the four corners of the search warrant:

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978); *United States v. Barone,* 584 F.2d 118, 121 (6th Cir.1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979). He must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

The defendant has offered no such proof. He has failed to establish any evidence to support his claim that there was no fugitive investigation at the time of the search warrant. Accordingly, this Court should decline to consider his assertion.

Second, even if the defendant had satisfied his burden, a cursory review of the records would demonstrate that he is simply wrong. As is detailed in the affidavit, Det. Pfeiffer filed a

8

criminal complaint warrant on Brown on September 14, 2022 and he was wanted on Jefferson County E-warrant number E05610004341032. Exhibit A, P. 7. Brown's claim that the affidavit was false is wrong and should be disregarded by this Court.

### ii. The Pen Register and Trap and Trace Was Lawfully Obtained.

A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted[.]" 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process that captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication[.]" 18 U.S.C. § 3127(4). Pen registers and trap and trace devices may be used with a wide variety of communication services, including telephones, cellular telephones, Internet user accounts, e-mail accounts, and web sites. The limitation on pen registers and trap and trace devices is that they may not be used to obtain the contents of communications. To obtain a pen register and trap and trace order, applicants must identify themselves, identify the law enforcement agency conducting the investigation, and then certify their belief that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the agency. 18 U.S.C. § 3122(b). The issuing court must also have jurisdiction over the offense being investigated. 18 U.S.C. § 3122(a)(1).

In this case, the pen register and trap and trace application was merged into the ping warrant obtained by Det. Pfeiffer. Det. Pfeiffer's affidavit contained the information required by the statute: 1) his identity as a detective with the LMPD, 2) and a certification that the information likely to be obtained by the pen register and trap and trace was relevant to an ongoing criminal investigation being conducted by the LMPD into Brown for both his fugitive investigation and his

9

connection with possible violations of weapon possession. Exhibit A, P. 11. Hence, the information sought pursuant to the pen register and trap and trace device was lawfully authorized.

## II. THE AFFIDAVIT FOR 8805 BEULAH CHURCH ROAD WAS SUPPORTED BY PROBABLE CAUSE TO ISSUE THE WARRANT.

Brown alleges that the affidavit in support of the search warrant for 8805 Beulah Church Road fails to establish probable cause to believe that the evidence sought would be found at the place to be searched at the time of the search. Brown's allegations again fail because the warrant contained sufficient information to establish the probable cause to justify the search.

### B. Legal Principles

#### i. Probable Cause

As outlined above, affidavits "must contain adequate supporting facts about the underlying circumstances to show that probable cause exists." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996). "Probable cause arises if there are 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990)). "Search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny." *Coffee*, 434 F.3d at 892. The question of whether an affidavit establishes a proper nexus is a fact-intensive inquiry requiring an examination of the totality of circumstances. *United States v. Brown*, 828 F. 3d 375 (6th Cir. 2016). The connection between place to be searched and evidence sought must be specific and concrete and not "vague" or "generalized." *Id.* citing *United States v. Carpenter*, 360 F. 3d 591, 594 (6th Cir. 2004).

The Sixth Circuit Court of Appeals has acknowledged, "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Jones*, 159 F.3d 969, 975

(6th Cir. 1998). However, a person's status as a drug dealer, standing alone, is not sufficient to establish probable cause to search his home. *Frazier*, 423 F.3d 526, 533. Thus, an affidavit must provide specific grounds to believe that evidence of a crime or contraband is likely to be found where the drug dealer lives. *See United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009) ("there is support for the proposition that status as a drug dealer plus observation of drug activity near defendant's home is sufficient to establish probable cause to search the home." (internal citation omitted)).

Other Circuits have also recognized that evidence will likely be found at a dealer's home. *U.S. v. Miggins*, 301 F.3d 384 at 394 (6th Cir. 2002)(citing *United States v. Feliz*, 182 F.3d 82, 87–88 (1st Cir.1999) (finding that it was reasonable to suppose that drug dealer stored evidence of dealing at home, even though no drug trafficking was observed to occur there); *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir.1999) ("[I]n issuing a search warrant, a magistrate is entitled to draw reasonable inferences about where the evidence is likely to be kept ... and ... in the case of drug dealers evidence is likely to be found where the dealers live.") (quoting *United States v. Reddrick*, 90 F.3d 1276, 1281 (7th Cir.1996)); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)("In the case of drug dealers, evidence is likely to be found where the dealers live.") (quoting *United States v. Valenzuela,* 596 F.2d 824, 829 (9th Cir. 1979)); *United States v. Luloff*, 15 F.3d 763, 768 (8th Cir.1994) (ruling that observations of drug trafficking occurring away from the dealer's residence, coupled with officer's statement in his affidavit that drug dealers often store evidence of drug dealing in their residences, provided probable cause for search of dealer's house); *United States v. Thomas*, 989 F.2d 1252, 1255 (D.C.Cir.1993) (per curiam) (concluding that observations of drug trafficking away from dealer's residence can provide probable cause to search the dealer's house); *United States v. Williams*, 974 F.2d 480, 482 (4th Cir.1992) (per curiam)

(finding that affidavit establishing that known drug dealer resided in motel was sufficient to show probable cause to search motel room for drug paraphernalia); *United States v. Davidson*, 936 F.2d 856, 859–60 (6th Cir.1991) (holding that the police had probable cause for the issuance of a search warrant since the affidavit revealed a substantial basis for concluding that a search of the defendant's residence would uncover evidence of wrongdoing); *United States v. Cruz*, 785 F.2d 399, 406 (2d Cir.1986) (finding probable cause for search of drug dealer's apartment, even though he was not seen using the apartment).

### i. The Affidavit Established Probable Cause

In this case, the affidavit contained sufficient facts to indicate a fair probability that evidence of narcotics trafficking would be found at 8805 Beulah Church Road. Although not binding precent, the Tenth Circuit has held that "Criminal history alone is not enough to support a finding even of reasonable suspicion, much less probable cause….However, criminal history, combined with other factors, can support a finding of reasonable suspicion or probable cause." *United States v. Artez*, 389 F.3d 1106, 1114–15 (10th Cir. 2004)(referencing *United States v. West,* 219 F.3d 1171, 1179 (10th Cir.2000); *United States v. Myers,* 106 F.3d 936, 939 (10th Cir.1997); *United States v. McCranie,* 703 F.2d 1213, 1218 (10th Cir.1983)). The affidavit included information pertaining to both Brown and Stott's criminal history, both of which contain trafficking convictions.

Additionally, the affidavit, in detailed form, explained why LMPD established surveillance on the residence. In the paragraphs which followed the description of the physical surveillance and the vehicle follow, the detective included language about his training and experience, and why the observed conduct supported the conclusion that narcotics trafficking was occurring at the location. The "SUMMARY" paragraph also provided a detailed list of reasons why probable cause existed

to support the authorization of the search warrant. Probable cause was abundantly established by: 1) Diaz Hernandez's follow of Brown to the search warrant location; 2) the multiple short stays observed by law enforcement, to include someone dropping off a vacuum sealer; 3) Brown, Stott and Diaz Hernandez coming and going from the house; 4) the fact that the interaction with Diaz Hernandez immediately following his departure of the house led to the seizure of large amounts of United States currency and suspected narcotics; 5) law enforcement observed Brown, Stott and Diaz each arrive in a separate vehicle and the search of Diaz's vehicle lead to the recovery of suspected narcotics; 6) the statements of Diaz Hernandez specifically indicating he had observed Brown and Stott with large amounts of currency and that Brown and Stott were smoking marijuana inside the residence; and 7) that Brown had handed Diaz Hernandez the bag that contained the kilo of suspected cocaine and that Stott had paid him for the transport of the suspected narcotics. This evidence overwhelmingly supported the conclusion that Stott and Brown were engaged in the trafficking of narcotics. Taken as a whole and coupled with the Detective's training and experience, there can be no doubt that there existed sufficient probable cause for the issuance of the warrant at 8805 Beulah Church Road and the vehicles present on the property.

As for the search of Brown's person, Brown was searched incident to arrest on the outstanding arrest warrant described above. Thus, the search which yielded large amounts of United States currency on his person was lawfully conducted.

### III. THE LEON GOOD-FAITH EXCEPTION TO THE EXCLUSIONARY RULE APPLIES IN THIS CASE.

As stated above, the warrants in this case adequately established probable cause to ping Brown's phone and to search 8805 Beulah Church Road. However, should the court determine that there was a constitutional violation, the searches should nonetheless be upheld under the good

13

faith exception established in *United States v. Leon*, 468 U.S. 897 (1984). The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights." *Leon*, 468 U.S. at 906 (internal quotation marks omitted). Its purpose is not to "cure the invasion of the defendant's rights which he has already suffered," *Leon*, 468 U.S. at 906 (internal quotation marks omitted), but to prevent "future violations of Fourth Amendment rights through the rule's general deterrent effect," *Arizona v. Evans*, 514 U.S. 1, 10 (1995); see *Elkins v. United States*, 364 U.S. 206, 217 (1960) ("The rule is calculated to prevent, not to repair."); see *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 362 (1998) ("We have never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence."); see also *Hudson v. Michigan*, 547 U.S. 586, 596 (2006).

The Supreme Court upheld the validity of a warrant under a "totality of the circumstances" approach when an anonymous tip by itself did not establish probable cause. *Illinois v. Gates*, 462 U.S. 213, 267 (1983). "In *United States v. Martin*, 297 F.3d 1308 (11th Cir.), the Eleventh Circuit concluded that although the affidavit did not establish probable cause, it 'contained sufficient indicia of probable cause to enable a reasonable officer to execute the warrant thinking it valid.'" *United States v. Carpenter*, 360 F.3d 591, 599 (6th Cir. 2004). "[W]hen law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system." *United States v. Leon*, 468 U.S. 897, 908 (1984). "An affidavit cannot be labeled 'bare bones' simply because it lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding; rather, it must be so lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, no reasonable officer would rely on it." *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017).

"The *Leon* exception is applicable in cases where we determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *Carpenter*, 360 F.3d at 596. *See United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998) (upholding a search where the affidavit underlying the warrant described the residence, the items sought, and the defendant's counterfeiting scheme, but connected the place to the illegal activity only by stating that the residence "was available" to the defendant); *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994) (upholding a search of safe deposit boxes at a bank where the affidavit underlying the warrant connected the boxes and the defendant's trafficking in illegal drugs only by stating that the officer's training and experience led him to believe that evidence would be located there).

In *Leon*, the Supreme Court established the good-faith exception to the exclusionary rule, which prevents the suppression of evidence "when the police conduct a search in 'objectively reasonable reliance' on a warrant later held to be invalid." *Davis v. United States*, 564 U.S. 229, 238-39 (2011) (quoting *Leon*, 468 U.S. at 922). The *Leon* Court, however, identified four circumstances in which the good-faith exception will not apply: (1) where the "magistrate judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false"; (2) where the "issuing magistrate wholly abandoned his judicial role"; (3) where the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where a search warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or things to be seized— that the executing officers cannot reasonably presume it to be valid." 468 U.S. at 923 (internal quotation marks omitted); see also

*United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006); *United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006).

In the present case, none of these circumstances would preclude the *Leon* good-faith exception. There is no actual evidence that the detective included false information in the affidavit or that the issuing judge acted as a partisan rubber stamp when authorizing the warrant. See *Higgins,* 557 F.3d at 391. Courts have most often declined to apply the good-faith exception under the third circumstance identified in *Leon*, that is, when the affidavit for a search warrant is so bare bones that it lacks a minimal nexus connecting the place to be searched with the evidence to be sought. *See, e.g.*, *Brown*, 828 F.3d at 385 ("the affidavit is devoid of facts connecting the residence to the alleged drug dealing activity"); *McPhearson*, 469 F.3d at 526 ("[T]he affidavit failed to establish a nexus between McPhearson's residence and evidence of wrongdoing . . . ."); *United States v. Laughton*, 409 F.3d 744, 749 (6th Cir. 2005) (same).

Here, as argued above, the affidavit does provide a sufficient nexus. In short, the facts in the affidavit "were not so vague as to be conclusory or meaningless" and therefore "reasonable officers could have believed that the affidavit as submitted . . . was sufficient to support the issuance of the warrant." *Carpenter*, 360 F.3d at 596; *see also Frazier*, 423 F.3d 526, 536 (6th Cir. 2005) (collecting cases applying the good-faith exception when the affidavit established "a sufficiently strong nexus" between the place to be searched and illegal activity). Therefore, any reasonably well-trained officer faced with executing the warrants would objectively rely in good faith on the issuance of the warrant.

The fourth circumstance may, depending on the circumstances, preclude the application of the good-faith exception when the warrant "fail[s] to particularize the place to be searched or the things to be seized." *Leon*, 468 U.S. at 923. In this case, the residential search warrant specifically

described the appearance and location of the residence, and the ping warrant provided the correct phone number for Brown, and described a basis for that determination.

## CONCLUSION

This Court should deny Brown's motion to suppress.

Respectfully submitted,

MICHAEL A. BENNETT
UNITED STATES ATTORNEY

*/s/ Alicia P. Gomez*
Alicia P. Gomez
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
Tel: (502) 582-6326
alicia.gomez@usdoj.gov

CERTIFICATE OF SERVICE

On March 17, 2024, I electronically filed this document through the ECF system, which will send a notice of electronic filing to all Counsel of record.

*/s/ Alicia P. Gomez*
Alicia P. Gomez
Assistant United States Attorney