UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,     Plaintiff,

v.     Criminal Action No. 3:22-cr-123-DJH-2

REGINALD DEWAYNE BROWN,     Defendant.

\* \* \* \* \*

**MEMORANDUM AND ORDER**

Defendant Reginald Dewayne Brown is charged with conspiracy to distribute a controlled substance and possession with intent to distribute a controlled substance. (Docket No. 57) Brown moves to suppress all evidence obtained from the search of his person, car, and 8805 Beulah Church Road, alleging several defects in the warrants authorizing the searches. (D.N. 105) The United States maintains that the warrants were valid and that the good-faith exception would apply regardless. (D.N. 109) For the reasons set forth below, the Court will deny Brown's motion to suppress.

**I.**

On September 21, 2022, Detective Cody Pfeiffer of the Louisville Metro Police Department (LMPD) applied for a warrant to search Brown's telephone. (D.N. 109-1) More specifically, Pfeiffer sought a warrant

> (1) authorizing the use of a PEN register on the telephone lines currently designated by [Brown's phone number]; (2) authorizing the use of a trap-and-trace device on the telephone line, tracking by GPS using latitude and longitude coordinates, and (3) requiring the disclosure of subscriber name and address, whether listed or unlisted, for numbers called by the telephone line or numbers calling the telephone line, or found during the investigation of [Brown's] case upon oral or written demands of agents of the Louisville Metro Police Department.

1

(*Id.*, PageID.502)

According to Pfeiffer's affidavit in support of the warrant, on September 14, 2022, Pfeiffer filed a criminal complaint against Brown, charging him with first-degree fleeing, first-degree wanton endangerment, excessive window tinting, and disregarding a stop sign. (D.N. 109-1, PageID.499) The charges against Brown arose out of an investigation that occurred on July 4, 2022. (*Id.*) That day, LMPD detectives "were conducting physical surveillance" at a convenience store where they "observed a known offender and multi-time convicted felon, Mr. Lorenzo Carroll, standing at the passenger side door of white 2016 Dodge Challenger . . . with a handgun with an extended magazine in his front waistband." (*Id.*) Carroll was accompanied by an unknown male, who later left the store in the Challenger. (*Id.*) Detectives followed the Challenger and initiated a traffic stop of the vehicle for excessive window tinting. (*Id.*, PageID.500) The driver "failed to yield and accelerated at a high rate of speed in a residential neighborhood fleeing detectives." (*Id.*) Detectives did not pursue the vehicle, instead choosing to terminate the stop. (*Id.*)

Detective Pfeiffer subsequently identified the driver of the Challenger as Brown, who was on probation for a state matter at the time. (*Id.*, PageID.501) Brown's probation officer gave Pfeiffer the telephone number and address that Brown had provided the probation office. (*Id.*) Pfeiffer contacted an Intelligence Research Specialist with the U.S. Drug Enforcement Agency, who confirmed that the telephone number was registered to Brown and assigned to T-Mobile. (*Id.*) The Specialist also informed Pfeiffer that Brown's number was "tied into an active DEA case." (*Id.*)

Based on his investigation, Pfeiffer certified in his warrant affidavit that

> the Louisville Metro Police Department is conducting a criminal investigation as well as a fugitive investigation of a violent felony offender in connection with possible violations of weapons possession. It is believed that [Brown] is utilizing the telephone in furtherance of the subject offenses and that the information likely

>  to be obtained from the PEN register and the trap-and-trace devices is relevant to the ongoing fugitive and criminal investigation being conducted by the [LMPD].

(*Id.*, PageID.503)  Jefferson County Circuit Court Judge McKay Chauvin authorized the warrant, and LMPD executed it the following day, September 22, 2022.  (*Id.*, PageID.495)  Pfeiffer "began receiving technological data from th[e] Pen Register and Trap and Trace" that same day.  (D.N. 109-2, PageID.515)

On September 23, 2022, Detective Pfeiffer applied for a warrant to search 8805 Beulah Church Road in Louisville, Kentucky, and two cars parked at the residence, an Audi A7 and a Chevrolet Malibu.  (*Id.*, PageID.507)  In his warrant affidavit, Pfeiffer explained that earlier that day, he had observed a Chevrolet Malibu "that Mr. Reginald Brown is known to operate traveling down Hurstbourne Parkway at Seaton Springs Parkway." (*Id.*, PageID.515)  Pfeiffer did not know whether Brown was operating the vehicle at the time.  (*Id.*)  He and several other LMPD officers followed the Malibu, and they observed a Nissan Murano that also appeared to be following the Malibu.  (*Id.*, PageID.516)  The Murano was registered to an individual from Texas and was driven by "a single Hispanic male." (*Id.*)  Both vehicles, the Malibu and the Murano, pulled into the driveway of 8805 Beulah Church Road.  (*Id.*)

"Detectives began conducting physical surveillance of [8805 Beulah Church Road] and immediately observed multiple vehicles coming and going from th[e] location."  (*Id.*)  LMPD Detective Eric Miller observed Brown; the driver of the Murano, later identified as Axel Diaz-Hernandez; and another individual driving an Audi A7, subsequently identified as Clarence Stott, meet at the residence.  (*Id.*)  Miller also saw an unknown person arrive at the residence and hand Stott "a vacuum sealer box and roll of bags," which Stott took inside.  (*Id.*)

Around two hours after the unknown person delivered the vacuum-sealer box and bags, Miller observed the Murano leave the residence.  (*Id.*)  LMPD detectives followed the vehicle,

3

which drove to a hotel and parked next to a pickup truck that had Virginia registration. (*Id.*) Diaz-Hernandez exited the driver's seat of the Murano "and grabbed a toolbox and placed it in the bed of the truck." (*Id.*) Diaz-Hernandez also "grabbed a brown bag and placed it in the back seat area behind the operator's seat [of the truck] along with an additional bag." (*Id.*) He then got into the truck. (*Id.*)

Detectives approached Diaz-Hernandez while he was in the truck and saw that "he had a user amount of marijuana that he was attempting to roll up." (*Id.*) Upon searching the truck, detectives discovered that the brown bag that Diaz-Hernandez had placed in the truck contained a kilogram of suspected cocaine. (*Id.*) Detectives also found "a large amount of US currency" on Diaz-Hernandez's person and in the truck. (*Id.*) After Diaz-Hernandez was arrested, he told Pfeiffer that Brown gave him the bag containing the suspected cocaine and that Stott paid him to transport the suspected narcotics. (*Id.*, PageID.518) Diaz-Hernandez also asserted that "there was an extremely large amount of US currency inside 8805 Beulah Church Road" and that Stott and Brown were smoking marijuana at the residence. (*Id.*)

Meanwhile, detectives surveilling 8805 Beulah Church Road observed Stott and Brown get into the Audi A7 that Stott had arrived in. (*Id.*, PageID.516) Because "Brown had an active felony warrant for his arrest, is known to flee and evade law enforcement, and . . . Brown and . . . Stott are violent felony offenders with extremely violent tendencies," law enforcement conducted a "take down" of the Audi. (*Id.*) Brown was taken into custody on his arrest warrant, and Stott was detained. (*Id.*, PageID.516–17) Detectives found that Brown and Stott both had "a large amount of US currency" on their persons. (*Id.*)

According to the affidavit, Pfeiffer "believe[d] that the search of 8805 Beulah Church Road w[ould] result in the seizure of evidence showing the involvement in the trafficking of a controlled

4

substance(s) in the Louisville, Jefferson County, Kentucky area to include illegal narcotics, US currency stemming from the sale of illegal narcotic transactions, and other evidence." (*Id.*, PageID.518)  Judge Chauvin authorized the search, and LMPD executed it the same day, September 23, 2022. (*Id.*, PageID.509)  During the search, law enforcement seized around eight kilograms of cocaine, packaging material, and a money counter in the kitchen, along with an AK-47 in the bedroom and $13,121 in U.S. currency throughout the residence. (D.N. 72, PageID.242 ¶ 13)

Brown seeks suppression of "all evidence seized from his person and car[1], and from 8805 Beulah Church Road on September 22 and 23, 2022 by federal agents and other law enforcement." (D.N. 105, PageID.437)  He contends that Pfeiffer's affidavit in support of the phone warrant "contained false and misleading information concerning Mr. Brown's alleged involvement with possible violations of weapon possession" and that "[t]he search warrant for 8805 Beulah Church Road failed to state probable cause to believe in the existence of a nexus between the location and evidence sought." (*Id.*)  The government opposes the motion, arguing that Pfeiffer's affidavits established probable cause and that the good-faith exception outlined in *United States v. Leon*, 468 U.S. 897 (1984), forecloses suppression in any event. (D.N. 109)  As explained below, the Court agrees that *Leon* applies and therefore "need not reach the question of whether the search warrant[s] w[ere] supported by probable cause." *United States v. Govea*, 806 F. App'x 423, 425 (6th Cir. 2020) (citing *United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2004); *United States v. Gilbert*, 952 F.3d 759, 762 (6th Cir. 2020)).

---

[1] The record does not identify any evidence seized from the Chevy Malibu that Brown often drove and had parked at 8805 Beulah Church Road.

II.

Pursuant to the Fourth Amendment, a warrant may issue only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc) (quoting *Illinois v. Krull*, 480 U.S. 340, 347 (1987)). But courts should not "suppress[] evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Leon*, 468 U.S. at 922. There are four scenarios where the *Leon* good-faith exception does not apply:

> (1) where the affidavit contains information the affiant knows or should have known to be false; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable [or] where the warrant application was supported by [nothing] more than a "bare bones" affidavit; [or] (4) where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid.

*Govea*, 806 F. App'x at 425 (alterations in original) (quoting *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004)).

A.   **Warrant for Pen Register/Trap and Trace Device**

A court may "authoriz[e] the installation and use of a pen register or trap and trace device . . . if the Court finds that the State law enforcement or investigative officer has certified to the court that the information likely to be obtained by such installation and use is relevant to an *ongoing criminal investigation*." 18 U.S.C. § 3123(a)(2) (emphasis added). Brown contends that Pfeiffer's assertion in the warrant affidavit "that the phone records will further any investigation (other than a broad fishing expedition) [was] not true and [was] not made in good faith" because

(1) "there was no fugitive investigation"; (2) "[t]here was no investigation of the window tint attempted traffic stop that would involve telephones"; and (3) "[t]here [was] no basis asserted at all for an investigation of Mr. Brown for weapons violations other than he was seen in public with a man who allegedly had a gun." (D.N. 105, PageID.439)  According to Brown, a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), is warranted.  (*See id.*, PageID.438)  In response, the United States argues that Brown "has failed to meet his heavy burden under *Franks v. Delaware* to allow this Court to consider facts outside the four corners of the affidavit" and that "his allegation[s] [are] demonstrably false." (D.N. 109, PageID.483)

To obtain a *Franks* hearing, a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and [ ] the allegedly false statement is necessary to the finding of probable cause."  *United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011) (alteration in original) (quoting *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008)).

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden.  His allegations must be more than conclusory.  He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).  In addition, the defendant "must accompany his allegations with an offer of proof."  *Id.*  "If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause."  *Id.*

Here, Brown has not shown that Pfeiffer's statements in the affidavit were false or that he intended to make false or misleading statements.  As the government observes, "Brown's statement that there was no fugitive investigation at the time of the issuance of the search warrant is refuted by the fact that there was an arrest warrant outstanding." (D.N. 109, PageID.483)  At the time

7

Pfeiffer filed the warrant affidavit, Brown was wanted in Jefferson County for fleeing, wanton endangerment, excessive window tinting, and disregarding a stop sign. (D.N. 109-1, PageID.499) The affidavit also states that LMPD observed Brown associating with a repeat offender who appeared to have a handgun, and when law enforcement tried to stop Brown, he fled—which was the basis for his arrest warrant in Jefferson County. (*Id.*, PageID.499–500) After providing this information in the affidavit, Pfeiffer certified in the LMPD was "conducting a criminal investigation as well as a fugitive investigation of a violent felony offender in connection with possible violations of weapon possession." (*Id.*, PageID.503) Brown has not provided evidence to support his conclusory allegations that Pfeiffer's statements were false. As a result, Brown is not entitled to a *Franks* hearing. *See Bennett*, 905 F.2d at 934. Additionally, because there is no indication that "the affidavit contains information the affiant knows or should have known to be false," the *Leon* good-faith exception applies. *Govea*, 806 F. App'x at 425.

**B.     Warrant for 8805 Beulah Church Road**

As to the search of 8805 Beulah Church Road, Brown asserts that the warrant affidavit "fail[ed] to establish probable cause to believe that the evidence sought would be found at the [residence] at the time of the search." (*See* D.N. 105, PageID.441) Under *Leon*, however, only a "bare bones" affidavit requires suppression. *See Govea*, 806 F. App'x at 425. The Sixth Circuit has "reserve[d]" the bare-bones classification for "affidavit[s] that merely 'state[] suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (en banc) (quoting *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004)). In other words, a bare-bones affidavit is one that "states 'only the affiant's belief that probable cause existed.'" *Id.* at 313 (quoting *United States v. Finch*, 998 F.2d 349, 353 (6th Cir. 1993)).

8

Contrary to Brown's argument, Pfeiffer's affidavit contained several factual allegations tying 8805 Beulah Church Road to potential drug activity. (*See* D.N. 109-2) Specifically, the affidavit alleged that (1) Diaz-Hernandez followed Brown to the residence and was found with a kilogram of cocaine and a large amount of U.S. currency after leaving the residence; (2) Detective Miller observed several instances where an unknown person dropped off vacuum-seal bags at the residence[2]; (3) Diaz-Hernandez told Pfeiffer that Brown gave him the bag containing the cocaine, that Stott paid him to transport the narcotics, that the residence contained "an extremely large amount of US currency," and that Brown and Stott were smoking marijuana in the residence; (4) Detective Miller observed Brown, Stott, and Diaz-Hernandez "come and go from the inside of 8805 Beulah Church Road, multiple times"; and (5) in Pfeiffer's experience, drug traffickers often use multiple vehicles, multiple locations, and multiple parties to transport illegal narcotics and to store illegal narcotics and the proceeds from the sale of those narcotics. (*Id.*, PageID.518)

Even if these facts failed to justify the warrant's issuance, "[a]n affidavit need only present 'some connection, regardless of how remote it may have been,' . . . to avoid the bare-bones designation." *Christian*, 925 F.3d at 313 (quoting *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017)). Pfeiffer's affidavit was not "bare bones" because it recounted multiple instances of suspected illegal drug activity at 8805 Beulah Church Road, and these facts were based on surveillance and information provided by Diaz-Hernandez, rather than "suspicions[] or conclusions." *Christian*, 925 F.3d at 312. "Thus, . . . the affidavit was not '*so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it.'" *Gilbert*, 952 F.3d at 765 (quoting *White*, 874 F.3d at 497). Accordingly, the

---

[2] In the warrant affidavit, Pfeiffer stated "that it is common for narcotic traffickers to utilize vacuum sealers to seal up their narcotics along with the US currency that stem from the sale of illegal narcotics." (D.N. 109-2, PageID.516)

9

Court finds that the *Leon* good-faith exception applies, and the evidence seized during the challenged searches is therefore admissible. *See id.* at 764–65; *Christian*, 925 F.3d at 312–13.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Brown's motion to suppress (D.N. 105) is **DENIED**.

April 19, 2024

David J. Hale, Judge
United States District Court